## LEVI POPE *v.* STATE.

[62 South. 10.]

1. HOMICIDE. *Instructions. Manslaughter. Conformity of evidence. Criminal law. Admission of evidence.*

Where in a case of homicide the jury having considered together all of the testimony, that for the state as well as that for the defense, after harmonizing it as far as possible, could have decided that defendant was not guilty of murder, nor was he justified in killing deceased, but that he was guilty of manslaughter, an instruction on manslaughter was authorized.

2. CRIMINAL LAW. *Admission of evidence.*

In a trial for homicide from a gunshot wound it was not reversible error to allow a surgeon who attended the deceased and saw the wound to testify through what organs in deceased's body the bullet would have gone, if it followed a certain course, and the effect of such wound, but in the absence of knowledge from an internal examination or probing, where the bullet did not come out, the surgeon should not be permitted to express his opinion as to the course of the bullet.

APPEAL from the circuit court of Coahoma county. HON. T. B. WATKINS, Judge.

Levi Pope was convicted of manslaughter and appeals. The facts are fully stated in the opinion of the court.

*Cutrer & Johnston,* for appellant.

By the assignment of errors in this cause, there are but two questions presented for review and adjudication by this court. They are as follows: First. That the

court erred in sustaining objections interposed on behalf of the state to certain questions propounded to the witness, Dr. J. W. Primrose, and in excluding certain testimony given by the witness, Primrose, as shown in the stenographer's notes with reference to the course of a bullet in the body of the deceased. Second. In giving, at the instance of the state, the following instruction, to wit: "The court instructs the jury that, if you believe from the evidence beyond a reasonable doubt, that the defendant killed the deceased in the heat of passion, without malice, at a time when he was in no danger, real or apparent, of losing his life, or of receiving great bodily harm at the hands of the deceased, you will find him guilty of manslaughter, and the form of your verdict will be 'We, the jury, find the defendant guilty of manslaughter.' "

We concede the general rule of law to be that an expert witness cannot give an opinion generally as to the range of a bullet, nor can an expert witness give opinion testimony as to the relative position of combatants, had he gained his opinion upon the range of a bullet; one court having given as an underlying reason for this rule that physicians were not experts in the matter of giving, or receiving wounds, and that such matters could be determined as readily by the laymen as by the experts; but, we submit that this rule does not apply to the testimony of the physician with reference to the nature and effect of an injury to the human body. Here were physical indications, showing the range of the bullet. The physician was used to give expert testimony as to what vital organs lay in the path of the bullet. Such testimony is peculiarly within the province of expert witnesses; no layman could tell through what organs the bullet passed; and no laymen could tell what the effect of such a wound would be. It was not possible to prove with greater accuracy than was used through what organs the bullet passed; no one had probed the wound; hence, the admon-

ition of the court to the jury that unless proof was made of the direction taken by the bullet while in the body of the deceased, they would not give weight to the testimony of the witness concerning the effect of the wound, took from the testimony of the expert all its force. In the opinion of the court in the case of *State* v. *Lee,* 27 L. R. A. 498: "It is true that a wound may be so situated that the practicability of self-infliction is an inference which all men are competent to draw, requiring no particular knowledge, or experience; therefore not a proper subject of expert testimony; but to draw such an inference from this particular wound—plainly required peculiar knowledge and experience not common to the world, and therefore the opinion of an expert founded on such knowledge and experience is admissible."

This case differs materially from the *Foster case,* 70 Miss. 755. In that case, our own court said: "The witness, McDade (a physician) was told to give the jury his opinion as to the range of the bullet which passed through the head—why permit the one man to draw the conclusion and from the opinion, when twelve had been selected and sworn to do that very thing?" The distinction is obvious. In this case, had the witness, Primrose, been asked to give an opinion as to the relative position of Gayton and Pope, or to state the position of Gayton's body at the time the wound was inflicted, the court would have been clearly right in excluding the answers, but here there can be no controversy as to the direction of the bullet in the body, and it was clearly competent to show by this witness what vital organs lay in the path of the bullet, and what the effect of a wound inflicted upon those organs would be; and that the refusal by the court to permit the introduction of this evidence clearly warrants a reversal of the cause.

We come next to consider the action of the court in instructing the jury for the state that they might return a verdict for manslaughter, if they believe the killing was

done in the heat of passion. We submit that there is no evidence in this case to warrant the giving of such instruction.

We do not conceive it necessary to dwell upon the prejudicial effect of the manslaughter instruction in a case of this kind. The frequent tendency of juries to compromise is too well known and appreciated by this court. Many jurors, rather than appear obstinate or provoke criticism, will agree upon a compromise verdict. This court has repeatedly held it to be error to give an instruction at the instance of the state authorizing a verdict of manslaughter, when in fact, there was no testimony upon which to base the instruction. *Virgil* v. *State,* 63 Miss. 320; *Johnson* v. *State,* 78 Miss. 627; *Hannah* v. *State,* 87 Miss. 375; *Stovall* v. *State,* 94 Miss. 373.

The case of *Stovall* v. *State* is so manifestly in point and the opinion so short, we feel that it will not be amiss to quote the opinion in full: "On the facts in this case, this killing was most manifestly murder, or nothing. If the killing was accidental, the defendant was guilty of no offense. If it was not accidental, he was guilty of murder beyond all controversy. The giving of the manslaughter instruction in such a case was manifestly error; and for this error the judgment is reversed and the case remanded."

In the case at bar, as we have stated, if the witnesses for the state are to be believed, this killing was most manifestly murder, or nothing. It was either done as the result of malice and premeditation; or it was done in self-defense.

We would again urge upon the court that there was no evidence upon which to base the instruction; hence, the giving of it was a more serious error than the giving of the instruction above referred to in the *Stovall case.*

In the case of *Virgil* v. *State, supra,* this court said with reference to the instruction, authorizing a manslaughter verdict in case similar to this: "The danger from such

an instruction is that the jury may take license from it to find a verdict of manslaughter upon testimony upon which they would shrink from rendering a verdict of guilty of the higher crime charged.''

*Frank Johnston,* assistant attorney-general, for the state.

The evidence is quite extensive but the facts as detailed by the witnesses are very simple. There are only two errors relied on by counsel for the appellant for a reversal of the case and they are as follows: First. The exclusion by the court of testimony proposed to be introduced in the cross-examination of Dr. Primrose touching his opinion as an expert in respect to the direction of the bullet that entered the deceased's body; and Second. The fact that the court gave an instruction to the jury on the subject of a verdict of manslaughter. These questions will be discussed in the order in which they are stated.

The question as to the exclusion of Dr. Primrose's opinion as to the direction of the bullet.

At the outset, I will submit the observation to the court that it was entirely immaterial in the case whether this bullet ranged upward or downward or to the left or to the right, after it entered the deceased's body. The fact that defendant shot the deceased is proven by the state's witnesses, is proven by the defendant's witnesses and admitted by the defendant himself.

According to the testimony of the state, the defendant sought the difficulty, got the deceased to go up the alley with him, gave the stick to his own wife and ordered her to beat the deceased with it. He was armed with the pistol at the time; the deceased was unarmed except with the pocket knife that was found closed after the difficulty was all over.

According to the state's testimony, the defendant's wife beat the deceased with the stick and this did not sat-

isfy the defendant and he took the stick from her and began to beat the deceased himself, and then the deceased grappled with him and the scuffle began and in the scuffle the pistol shot was fired.

According to the wife's testimony, the scuffle preceded the pistol shot. According to the defendant's own testimony, it was not until the deceased grappled with him that he drew the pistol and fired.

Now, according to some of the witnesses for the state there was a scuffle between the men after the pistol shot was heard. The theory, obviously, of the defendant's counsel was that the pistol shot was fired after the deceased had struck the defendant with the stick and after he had made the attack on him with the knife, and then the pistol shot was the last act of the drama and terminated the scuffle. What the counsel for the defense had in view was to negative the idea of exclusion from the testimony of some of the state's witnesses that the scuffle continued between the two men after the pistol shot was fired by proving by the opinion of the doctor that a man wounded in this way could not have continued to scuffle after the pistol shot had been fired.

The only possible effect that the proposed testimony could have had and the only possible purpose of proposing this testimony by the defense was to discredit the story told by one or two of the state's witnesses that the scuffle continued after the pistol had been fired. Now, the defense had the benefit and the full benefit on the trial of this physician's statement as to what organs of the body this bullet would have passed through if it had ranged upward and to the left.

This physician was also permitted to state the character of nervous shock that would have happened at once on the hypothesis that this bullet had ranged upward and to the left and passed through the organs described by him and he says the shock would have been extreme or intense or that there would have been, in the suppositi-

tious case, a paralysis of the vasco-motor muscles. And again, this physician was permitted to testify on the supposititious case submitted to him, as to the direction of a pistol shot wound in the human body that ' the injury would have been an immediate collapse and that after receiving such a pistol shot, it was his opinion that the deceased could not have inflicted the injuries on the defendant.

The court held that while it was admissible to allow the testimony of this doctor on the question hypothetically stated to him as to what organs of the human body would have been penetrated and wounded by a bullet taking the supposed course and what the immediate effect the wounding of these organs by the pistol shot would have been, that he could not be permitted to answer the question as to his opinion in point of fact as to what direction and range that bullet took after entering the body of the deceased. It was clearly proven on the cross-examination and the examination in chief of Dr. Primrose that he made no internal investigation or examination of this wound; he did not probe the wound; he made no autopsy of the body and he had no more idea than any man on the jury, as a fact, the precise direction and range of that bullet; he made only an external and superficial examination of the wound and he found a bullet hole in the man's body as located by him and a small scratch near the wound or on one side of it; he says that he made no examination which would enable him to state, as a fact, which way the bullet went; it entered the man's body and it never came out of the body and it went into the body and lodged there somewhere in his internal organs or vitals. I think the line of demarcation between the competent evidence and the incompetent evidence of this expert was clearly defined by the court in its ruling on the subject.

As I have stated, the obvious purpose of this line of inquiry of the physician was to show that the deceased

must have been instantly incapacitated by nervous shock and by paralysis from continuing the scuffle or fight, and this fact could not have been regarded as material except as making the conflict with the testimony of some of the state's witnesses that the scuffle had continued after the pistol had been fired. The court will observe especially that this physician could not state as a fact the precise direction, range and track of the bullet because he had made no examination that could possibly have enabled him to have obtained a knowledge of this fact; whereas the court permitted him to answer and he did answer the hypothetical question that if the bullet had entered at the spot indicated by him and had ranged upward and to the left what organs it would have penetrated, and he also was permitted to state, as a fact, that a wound of that hypothetical character would have caused a nervous shock resulting in an instant collapse. That was as far as this physician could have gone within the limit of the rule of evidence allowing an expert opinion as competent testimony. He could no more tell from his observation of the external wound without some internal examination what the actual range in fact, of that bullet was than any member of the jury. He could describe the point of entrance of the wound, and the fact that it did not leave the body and that it was lost somewhere in the internal organs, and he could also state, as a hypothetical fact, what the physical effect of a wound would have been on the hypothetical case stated to him but his opinion in point of fact as to the range and direction of that bullet was not an expert opinion whatever and it was a matter about which the jury could form an opinion as well as a professional expert.

In *Foster's case,* 70 Miss., the doctor was allowed to state from the direction that the bullet took through the body of the deceased and a bullet hole in the wall of the car in which the homicide took place, his opinion in regard to the relative position of the accused and the de-

ceased at the time of the killing. In this case, the sur-
geon had made a post-mortem examination. In that case
the court said that where he had made such post-mortem
examination and had traced the track of the bullet, that
he could testify in regard to the course and range of the
bullet through the body but he could not express the
opinion to the jury under the guise of an expert opin-
ion as to the position of the deceased at the time he was
shot. That was a matter for the jury to determine. *Fos-
ter's case,* 70 Miss. 755. On the same line, I cite the
case of *Milwaukee Railway Co.* v. *Kellogg,* 94 U. S. 469.

This court has so clearly settled the rule of law in re-
gard to the manslaughter instructions in cases of homi-
cide that it is wholly unnecessary for me to make a review
of the decisions of this honorable court on this subject. I
will simply allude to several of the cases. In the *Virgil
case,* 63 Miss. 317, 320, there was a manslaughter instruc-
tion given, and the court said that if the defendant com-
mitted the homicide at all, it was an atrocious murder
and therefore it was erroneous for the trial court to
instruct the jury on the subject of manslaughter as it
was really an indirect invitation for a compromise ver-
dict.

In *Johnson's case,* 78 Miss. 627, this court held that it
was not error to refuse an instruction in a murder case
in regard to manslaughter if, under the evidence in the
particular case, the jury could not have properly found
a verdict of manslaughter.

In *Hannah's case,* 87 Miss., the complaint of the de-
fendant in that case was that the court had refused to
grant him an instruction on manslaughter, whereas the
facts in the case showed clearly that the homicide was
either a deliberate murder or committed in self defense.

So in the case of *Stovall* v. *The State,* 94 Miss. 372, the
court said where the facts in the case showed that the
defendant was either manifestly guilty of murder or
wholly innocent of any crime that the instruction for

manslaughter, which was given in that case, ought not to have been given. In *Stovall's case* the question was whether the homicide was murder or an accidental killing. So, thereafter, it is apparent that the rule on this subject is well settled in every point of view.

So, in this case, the court instructed the jury, in the fourth instruction for the state, that if they believed that the defendant killed the deceased in the heat of passion and without malice, that they should find him guilty of manslaughter.

Without a further analysis of or allusion to the evidence in the case, I respectfully submit to the court that there are three theories in this case arising on the evidence, viz.: First, this is a case of murder, or second, a case of manslaughter, or third, a case of self-defense.

According to the testimony of the defendant himself and the testimony of his wife, the case was either manslaughter or self-defense. I think the more correct construction of the defendant's own testimony, taken in connection with his wife's testimony makes this a case of manslaughter.

On the other hand, taking the case on the testimony of the state's witnesses, it is clearly a case of murder where the defendant instigated the hostile meeting, where he was the aggressor and where he was unmistakably the assailant. The jury took the view evidently that it was a sudden quarrel and that the deceased was the aggressor and assaulted the defendant with a stick and in the scuffle that ensued, the defendant killed him in the heat of passion.

Argued orally by *O. G. Johnson,* for appellant and *Frank Johnston,* assistant attorney-general, for the state.

REED, J., delivered the opinion of the court.

Levi Pope was indicted for murder, and convicted of manslaughter. He contends that the evidence in the case

was not sufficient to sustain a verdict of manslaughter. He assigns as error the giving at the instance of the state, of the following instruction: "The court instructs the jury that, if you believe from the evidence beyond a reasonable doubt that the defendant killed the deceased in the heat of passion, without malice, at a time when he was in no danger, real or apparent, of losing his life, or of receiving great bodily harm, at the hands of the deceased, you will find him guilty of manslaughter, and the form of your verdict will be: 'We, the jury, find the defendant guilty of manslaughter.' "

It is argued by counsel for appellant that there are only two theories arising out of the evidence in this case, to wit: First, a case of murder; second, a case of self-defense. The state claims that there is another theory from the evidence—a case of manslaughter. If the jury believed only the testimony introduced by the state, they could have found appellant guilty of murder. On the other hand, if they believe only the testimony for the defense, they could have acquitted him. But a careful reading of the entire record in this case leads us to conclude that the jury could have considered together all of the testimony, that for the state as well as that for the defense, and, after harmonizing it as far as possible, could have decided that appellant was not guilty of murder, nor was he justified in killing deceased, but that he was guilty of manslaughter. They could have believed some of the testimony for the state and some of that for the defense. To illustrate: The theory of appellant's defense depends in a large measure upon the fact that deceased was assaulting him with a knife when he fired the fatal shot. Now the testimony shows that the knife was afterwards found on the ground near the place of the altercation, and that it was closed, and the testimony of the surgeon showed that the scratch, or slight wound, over appellant's eye, might have been caused by any sharp object, or by a scratch of the finger nail. The jury

could have decided from the testimony that appellant was not cut by the knife, and that it was not really being used in the fight when he shot the deceased, and could have decided that in the sudden encounter, after being struck with the stick, which was broken, appellant, in the heat of passion, and without justification, killed deceased. Therefore, we do not believe that the trial court erred in giving the instruction complained of.

We do not see any reversible error in the action of the court in the rulings relative to the admission of certain testimony by Dr. Primrose, the surgeon who attended deceased, with reference to the course of the bullet in the body of deceased. He was permitted to testify what he actually knew of the wound, and through what organs in deceased's body the bullet would have gone, if it followed a certain course, and the effect of such wound. He did not probe the wound, nor did he make any autopsy of the body. The bullet did not come out, but remained in the body. In the absence of knowledge from an internal examination, the surgeon was not permitted to express his opinion as to the course of the bullet.

*Affirmed.*

Cook, J. (dissenting).

For the first time, I find myself in the minority in the decisions of this court. As I read the evidence in this case, there is not a shred of testimony in the entire record which could, by any possibility of construction, authorize the jury in believing that this defendant was guilty of manslaughter. The issue is sharply defined by the evidence in the case, the circumstantial evidence for the state showing a rather weak case of murder; but, if believed, it would have justified the jury in rendering a verdict against the defendant for that crime. The evidence for the defendant shows, without question that he was justified in slaying the deceased. This being the state of the record, I think the instruction given by the court at the request of the state was unwarranted, and

undoubtedly prejudiced the accused. The instruction authorized a compromise, which was unsupported by either the evidence of the state, or the defendant, or the evidence as a whole.

The opinion of the court says: "If the jury believed only the testimony introduced by the state, they could have found appellant guilty of murder. On the other hand, if they believed only the testimony for the defense, they could have acquitted him." The only objection to this language is: The court, in my opinion, should have employed the word "should" instead of "could." The last pronouncement of this court upon the precise question here involved reads as follows: "The instruction authorizing the jury to convict the defendant of manslaughter was vicious in the extreme, when applied to a case like the one under review. There is no halfway ground here; no debatable question, except the defendant's guilt or innocence of the crime of murder. To advise the jury that they could compose their differences and doubts, if any they had, by finding the defendant guilty of a lesser crime, without evidence to support the verdict, is unfair to defendant and manifest error." *Parker* v. *State,* 58 South. 978.

The quotation from this opinion was announced to be the law in this state July 1, 1912, and; without expressly overruling this case, I am unable to see how the present case can be affirmed. If, without the advice of the court, the jury should have returned a verdict of manslaughter, it might be argued from the evidence that defendant had no right to complain; but in my opinion, in a case like the one under review, the jury will usually compromise their differences and render a verdict for the lesser crime, if the instructions authorize such verdict, and this cannot be tolerated by the court without overthrowing the well-settled law of this state.